UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILO ROSE,

    Petitioner,

v.                                                                             Case No. 8:93-cv-1169-T-23EAJ

JAMES V. CROSBY, JR.,

    Respondent.
_____/

## REPORT AND RECOMMENDATION

Rose's petition for the writ of habeas corpus challenges the validity of his state court conviction for murder and sentence of death.  On November 8, 2005, the Honorable Steven D. Merryday directed that the undersigned United States Magistrate Judge conduct an evidentiary hearing pursuant to *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L.Ed.2d 562 (1975), and render a report and recommendation on Rose's motion (Dkt. 89) for self-representation.  In compliance with the order (Doc. 89) setting the hearing, counsel for the respondent and counsel for Rose filed briefs addressing Rose's right to self-representation in a federal habeas proceeding (Doc. 93 & 94, respectively).  Both counsel recognize that the Sixth Amendment right to self-representation, as recognized in *Faretta*, only applies to initial criminal trial proceedings and not subsequent proceedings, neither appeals nor post-conviction proceedings. Respondent's brief at 1-3 (Doc. 93) and Rose's brief at 2-3 (Doc. 94).

On December 12, 2005, the undersigned conducted an evidentiary hearing within the rubric of *Faretta* to determine whether Rose understands the implications of self-representation. Rose was the only individual to testify at the hearing. Transcript of Proceedings (Doc. 98). The undersigned makes the following findings of fact from the hearing.

## I. FINDINGS OF FACT

1. Milo Rose is 55 years of age and is of generally good health, although he had a drug and alcohol problem in the 1970's. Transcript at 9-11.

2. Mr. Rose is a plumber by trade. He completed less than two years of junior college in the field of mental health and psychology. Transcript at 9, 14.

3. Mr. Rose did not study the law at anytime prior to his conviction, but since his incarceration he has read legal books and published opinions that pertain to his own case; he had not acted as a "jailhouse lawyer" helping other inmates. Transcript at 12-13. By his own admission, Mr. Rose has no knowledge of the appellate rules that would govern his appeal to the Eleventh Circuit Court of Appeals. Transcript at 14.

4. The reason Mr. Rose wants to represent himself in this proceeding is that the attorneys who have represented him have refused to assert certain issues he believes should be raised: post-conviction counsel in 1987 failed to develop a *Brady* claim, post-conviction counsel in 1996 "proved themselves correct" in stating that "they were ineffective," and present counsel has refused to raise certain issues "the way I want them raised." Transcript at 17-18. Mr. Rose understands that present counsel can be replaced with a new attorney, but believes that a replacement would simply delay his

case further. Transcript at 19-20. Mr. Rose seeks self-representation because he believes that will cause his case to be decided more quickly. Transcript at 27.

5. Mr. Rose understands that there may be procedural bars that will preclude the court from reaching the merits of some of his claims, but believes that the court can review the merits of defaulted claims as plain error. Transcript at 20.

6. If Mr. Rose is unsuccessful in obtaining habeas relief in this court, then the circumstances would force him to accept representation by an attorney on appeal and in any future proceeding when a death warrant issues. Transcripts at 22-23 & 27-28. The request for self-representation is limited to only the pending habeas corpus petition in the district court. Transcript 45.

7. Mr. Rose does not know the standard of review that will govern the review of his petition. Transcript at 25.

8. After explaining to him the meaning and limitations of having standby counsel, and that it is not the same as having co-counsel, Mr. Rose stated that he wants standby counsel appointed for the purpose of taking possession of the 45 boxes of materials in the control of present appointed counsel and to possibly look through those boxes to find certain documents Mr. Rose may believe he needs to review. Mr. Rose does not want present counsel appointed as standby counsel because said counsel failed to research certain issues Mr. Rose wanted researched. Transcript at 30-34.

9. If Mr. Rose is allowed to represent himself, he will not have unrestricted access to the inmate law library or his legal materials, especially the 43 boxes of materials, and his access to the library and his materials will not be increased because he is

representing himself. Because of this limited access, Mr. Rose will not be able to meet the normal filing deadlines. Transcript at 36-37.

## II. CONCLUSIONS OF LAW

### A. Right to Self-Representation

Rose had a Sixth Amendment right to counsel when he was convicted in state court. "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California*, 422 U.S. at 807. Rose claims that he has a Sixth Amendment right to represent himself in this federal habeas proceeding. He is mistaken. Granted, Rose had a protected Sixth Amendment right to self-representation at the time of his criminal trial.

> The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation–to make one's own defense personally–is thus necessarily implied by the structure of the Amendment.

*Faretta v. California*, 422 U.S. at 819. But once a jury makes a finding of guilt, the balance of interests between the state and the accused changes. "The status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." *Martinez v. Court of Appeal of California*, 528 U.S. 152, 162 (2000). As a consequence, the Sixth

-4-

Amendment right to self-representation vanishes following a guilty verdict, including on direct appeal. "[N]either the holding nor the reasoning in *Faretta* requires California to recognize a constitutional right to self-representation on direct appeal from a criminal conviction." *Martinez v. Court of Appeal*, 528 U.S. at 163. *Accord Douglas v. California*, 372 U.S. 353, 357-58 (1963)(the right to counsel on the first appeal of right is based on the Fourteenth Amendment Equal Protection Clause and not the Sixth Amendment). Instead, the reviewing court has the discretion whether to allow self-representation.

> Considering the change in position from defendant to appellant, the autonomy interests that survive a felony conviction are less compelling than those motivating the decision in *Faretta*. Yet the overriding state interest in the fair and efficient administration of justice remains as strong as at the trial level. Thus, the States are clearly within their discretion to conclude that the government's interests outweigh an invasion of the appellant's interest in self-representation.

*Martinez v. Court of Appeal*, 528 U.S. at 163. Moreover, after a defendant passes beyond the direct appeal stage and into post-conviction proceedings, there is simply no constitutionally protected right to counsel.

> We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, *see Johnson v. Avery*, 393 U.S. 483, 488, 89 S.Ct. 747, 750, 21 L.Ed.2d 718 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals. *Wainwright v. Torna*, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982); *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). We think that since a defendant has no federal constitutional right to counsel when pursuing a discretionary appeal on direct review of his conviction, a fortiori, he has no such right when attacking a conviction that has long since become final upon exhaustion of the appellate process.

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). Consequently, any right to counsel Rose may have is not constitutional, but statutory.

Because Rose is challenging a state court conviction and sentence of death in a § 2254 habeas petition, the appointment of counsel is governed by two statutory provisions, both of which recognize that self-representation and the appointment of counsel are within the court's discretion:

(1) "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654; and

(2) "In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other service in accordance with paragraphs (5), (6), (7), (8), and (9)." 21 U.S.C. § 848(q)(4)(B).

Because Rose has neither a constitutional right to counsel nor a right to self-representation in the post-conviction proceeding, but instead both are within the court's discretion, the undersigned will now determine whether Rose should be allowed to represent himself in this proceeding.

### B. Discretion of the Court

The dangers inherent in self-representation accompany Rose's request. He is not schooled in the law, but recognizes that the claims raised in his petition are

-6-

complex, especially regarding procedural default issues and the standard of review that will govern this action. And as an incarcerated individual, he will have limited access to a law library as well as his voluminous legal materials. Rose believes he can surmount these problems by relying on the petition and briefs already on file, eliminating his need to conduct any research or write any new briefs. Because the petition and briefs are four years old and do not address the issues recently resolved in state proceedings, as well as the intervening changes in case law regarding death penalty matters, the likelihood is that a new petition and new briefs are prudent. Consequently, Rose's belief that he will get a speedier review of his petition if he proceeds *pro se* rather than with counsel is not well founded.

The principal factor that weighs against allowing Rose to represent himself is that he desires self-representation limited only to a decision here at the district court level. Rose admits that he will want counsel appointed to represent him if his petition is unsuccessful and an appeal is necessary. Consequently, counsel should not be dismissed and Rose should not be allowed to represent himself in this proceeding.*

### C. Appointed Counsel

When present counsel was appointed more than two years ago, the action was stayed for a considerable period of time to allow counsel to review 43 boxes of materials provided by the Capital Collateral Regional Center. The action was stayed

---

* Rose requested during the hearing that standby counsel be appointed to assist him with self-representation. If the district court follows the recommendation to disallow self-representation, then the issue of standby counsel is also resolved. If the district court allows self-representation, then Rose requests that the court dismiss present counsel and appoint new counsel as standby counsel.

further until state proceedings concluded recently. Present counsel represented Rose in those state proceedings. Consequently, considerable time and resources have already been expended by present counsel on Rose's behalf. Dismissing present counsel and appointing new counsel will substantially delay review of Rose's claims, delay that Rose expressly wishes to avoid.

Rose has not presented a valid reason for dismissing present counsel. Rose filed two motions (Doc. 75 & 77) seeking removal of present counsel, but both times the district court rejected (Doc. 76 & 78) each motion because Rose had shown only a disagreement in tactics or strategy and not a conflict of interest. Tactics and strategy are left to the discretion of counsel. White v. Singletary, 972 F.2d 1218, 1220 (11th Cir. 1992), *cert. denied*, 514 U.S. 1131 (1995). *See also Jones v. Barnes*, 463 U.S. 745 (1983)(Counsel need not raise every nonfrivolous issue on appeal.). *Accord Atkins v. Dugger*, 541 So.2d 1165, 1167 (Fla. 1989)("Most successful appellate counsel agree that from a tactical standpoint it is more advantageous to raise only the strongest points on appeal and that the assertion of every conceivable argument often has the effect of diluting the impact of the stronger points."). Rose did not present anything further during the evidentiary hearing that would necessitate the dismissal of present counsel. Nevertheless, because Rose expressed a desire to dismiss present counsel and have different counsel appointed as standby counsel if allowed to proceed *pro se*, and if the district court follows the undersigned's recommendation to disallow self-representation, the court should give Rose an opportunity to choose between proceeding with present counsel or accepting the concomitant delay caused by the appointment of new counsel.

Rose's primary desire is an expeditious review of his conviction and sentence. Because Rose should not be allowed to proceed *pro se*, and because present counsel is an experienced capital litigator who has been representing Rose for more than two years and knows the present record (including the 43 boxes of legal materials), Rose should be required to proceed with present counsel. Rose has not shown that there is a complete break-down in the attorney-client relationship. *See, generally, Hardwick v. Corsby*, 320 F.3d 1127, 1189-90 (11th Cir. 2003)(complete break-down in attorney-client relationship in capital trial amounts to ineffective assistance of counsel). Instead, Rose's complaints directed towards present counsel amount to a difference of opinion regarding the continued pursuit of state court proceedings (which have now concluded) and tactics or strategy regarding the presentation of claims for relief. These differences do not amount to a conflict necessitating the appointment of new counsel.

### III. CONCLUSION

Rose's expressed desire for self-representation is predicated upon his erroneous belief that his petition will be decided more quickly if he proceeds *pro se*. Because the present amended petition (Doc. 37) will likely need amending to address the matters recently resolved in state proceedings, and because the present briefs are more than four years old, a second amended petition might be required and new briefs are required. Rose has neither the legal training nor adequate access to research the legal and evidentiary materials necessary to timely prepare the new petition or subsequent briefs. Rose's request for self-representation is a limited request; Rose recognizes that he will need to be represented by appointed counsel on any appeal should his habeas challenge prove unsuccessful. All of these factors weigh heavily against permitting

Rose to represent himself in this matter and instead support a conclusion that the court should exercise its discretion to deny the request. Further, because Rose currently has experienced capital counsel representing him, and substitution of counsel would inevitably delay the proceedings, the court should also permit current counsel to continue as counsel for Rose as the concerns expressed by Rose do not rise to the level of circumstances warranting substitution of counsel in this case.

## IV. RECOMMENDATION

The undersigned recommends that the Honorable Steven D. Merryday deny Rose's request for self-representation (Doc. 88) and also order that current counsel for Rose remain as counsel of record.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 6.02(a), specific written objections to this report and recommendation within ten days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this report and recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

ORDERED in Tampa, Florida, on January 17, 2006.

Elizabeth A. Jenkins
UNITED STATES MAGISTRATE JUDGE