UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILO ROSE,

      Petitioner,

v.                                  Case No. 8:93-cv-1169-T-23EAJ
                                        **DEATH CASE**

SECRETARY, Department of Corrections,

      Respondent.

_____/

### O R D E R

Rose's second amended petition for the writ of habeas corpus pursuant to 28

U.S.C. § 2254 (Doc. 108) challenges the validity of both his conviction for murder and

sentence of death.  Several motions are pending, and several grounds are procedurally

barred from review on the merits.

## I. **PENDING MOTIONS**

Milo Rose again requests (Doc. 110, 112, 117, and 120) permission to proceed pro

se based on an "irreconcilable attorney/client conflict."  The magistrate judge conducted a

hearing (Doc. 97) on Rose's similar motion (Doc. 88).  After considering both the report

and recommendation (Doc. 99) and the objections (Doc. 100, 101 and 103), the motion

requesting self-representation was denied (Doc. 104).  Nothing in the recent requests

(Doc. 110, 112, 117, and 120) changes the basis for rejecting the request to proceed

pro se, in particular, Rose's complaints still involve a mere difference in opinion over

tactics and strategy and not an actual conflict of interest.[1]

_____

[1]  Rose experienced similar disagreements with every counsel appointed to represent him in the state
proceedings, as revealed in Rose v. State, 617 So.2d 291, 293 (Fla.), cert. denied, 510 U.S. 903 (1993):

    A team of two public defenders was originally appointed to represent Rose in October 1982.
    In January 1983, Rose sought to dismiss the public defenders because of an "irreconcilable
    conflict."  The same public defenders had represented Rose in an earlier case and Rose had
    filed a grievance proceeding against them alleging gross misconduct, negligence, and

Rose, through counsel, moves (Doc. 115) for leave to amend the petition to include a challenge to Florida's lethal injection protocol.  The respondent's objections (Doc. 116) have merit.  The proposed ground is an entirely new ground, completely unrelated to a ground asserted either in the original, amended, or second amended petitions.  Additionally, because Rose admits that he has not presented this ground to the state courts, the result of the proposed amendment is a "mixed petition," which will cause further delay.  See Rhines v. Weber, 544 U.S. 269 (2005), and Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

Rose, through counsel, requests the appointment of co-counsel (Doc. 114) and authorization to retain an investigator (Doc. 118).  Neither motion adequately explains the need for assistance.  This case is nearing decision on the merits.

Rose's second amended petition presents eighteen grounds for relief.  The respondent opposes reviewing the merits of seven grounds based on lack of a federal question, exhaustion, or procedural default.  The respondent's argument has merit for six of the challenged grounds.

A.  Federal Question:

A federal petition for the writ of habeas corpus to review a state court conviction is justiciable "only on the ground that [the petitioner] is in custody in

---

ineffective assistance with respect to the earlier representation.  The trial judge appointed a new attorney in February.  Trial was set for mid-March.  However, that attorney withdrew because of case load conflicts.  The next attorney was appointed only a few days before trial was set to begin.  He was allowed to withdraw after Rose told him that he did not want him as his attorney and refused to waive speedy trial to allow time to prepare for trial.

Rousen was appointed on March 31.  Trial was set for April 11.  On April 7, Rousen moved to withdraw because Rose refused to waive his right to speedy trial.  Finally, Rose agreed to waive speedy trial to allow Rousen to conduct discovery.

violation of the Constitution or laws or treaties of the United States."  28 U.S.C.

§ 2254(a).  See Wainwright v. Goode, 464 U.S. 78 (1983) and Engle v. Isaac, 456

U.S. 107, 119 (1981).  See also Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir.

2000) ("The writ of habeas corpus . . . was not enacted to enforce State-created

rights."), cert. denied 531 U.S. 1170 (2001); Brannan v. Booth, 861 F.2d 1507, 1508

(11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no

basis for habeas relief.").

Ground XIV

> A death sentence in this case is disproportionate punishment, in
> comparison with other Florida cases in which life sentences resulted,
> and such arbitrary application of death violates the Eighth and
> Fourteenth Amendments.

Proportionality review is not constitutionally required.  "There is thus no basis

in our cases for holding that comparative proportionality review by an appellate court

is required in every case in which the death penalty is imposed and the defendant

requests it."  Pulley v. Harris, 465 U.S. 37, 50-51 (1984).  Consequently, Rose's

dissatisfaction with the state court's proportionality review fails to assert a federal

issue.

Ground XVIII

> The State of Florida fails to afford Mr. Rose a clemency review process
> which comports with due process.  The process of clemency review in
> Florida violates Mr. Rose's Fourteenth and Eighth Amendment rights.

Florida's clemency review process is a state law issue not reviewable in a

federal habeas petition. "[P]ardon and commutation decisions have not traditionally

been the business of courts; as such, they are rarely, if ever, appropriate subjects for

- 3 -

judicial review." Connecticut Bd. of Pardons v. Dumschat, 452 U.S. 458, 464 (1981). Consequently, Ground XVIII is not reviewable on the merits.

B.  Exhaustion:

A petitioner must present each claim to the state courts before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365 (1995), quoting Picard v. Connor, 404 U.S. 270, 275 (1971).  Accord Rose v. Lundy, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").  Briefing an issue as a matter of state law is not sufficient to exhaust a federal claim on the same grounds.

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan v. Henry, 513 U.S. at 365-66.  Accord Upshaw v. Singletary, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  The respondent argues that Rose failed to alert the state courts that the claims asserted in Grounds XII and XVI contained a federal issue.

Ground XII

The trial court's conclusion that the law required imposition of the
death penalty violated the Eighth and Fourteenth Amendments.

Rose argues that the trial judge erroneously believed that, according to

Florida law, sentencing Rose to death was mandatory and not discretionary.  In his

federal petition, Rose specifically alleges that the trial court's erroneous belief denied

his Eighth and Fourteenth Amendments rights.  Issue VIII in Rose's direct appeal

(Respondent's Exhibit B-1 at 41-42) failed to specifically cite either amendment.

However, the argument specifically cited Proffitt v. Florida, 428 U.S. 242 (1976), and

Roberts v. Louisiana, 428 U.S. 325 (1976), for the proposition that a mandatory

death sentence violates the Eighth and Fourteenth Amendments.  Rose's citation to

federal authority was sufficient to alert the state court that he was asserting a federal

claim.  Baldwin v. Reese, 541 U.S. 27, 33 (2004) ("A litigant wishing to raise a

federal issue can easily indicate the federal law basis for his claim in a state-court

petition or brief, for example, by citing in conjunction with the claim the federal

source of law on which he relies or a case deciding such a claim on federal grounds,

or by simply labeling the claim 'federal.'").[2]  Consequently, Rose properly exhausted

the Eighth and Fourteenth Amendments claim asserted in Ground XII.

Ground XVI

The introduction of nonstatutory aggravating factors so perverted the
sentencing phase of Mr. Rose's trial that it resulted in the totally
arbitrary and capricious imposition of the death penalty in violation of

---

[2]  Rose also cites Ring v. Arizona, 536 U.S. 584 (2002), in his pending petition.  The respondent
objects to expanding this ground to include a claim based on Ring.  In his reply (Doc. 111), Rose recognizes
that Ring is not retroactively applicable.

the Eighth and Fourteenth Amendments of the United States
Constitution.

Rose asserts that the jury was allowed to hear testimony that "Rose had
committed prior offenses for which he had not been convicted and that a charge of
parole violation remained pending." Issue IV in Rose's direct appeal (Respondent's
Exhibit B-1 at 28-29) failed to either cite the constitutional amendments, a federal
case, or label the claim as federal. Baldwin v. Reese, 541 U.S. at 33.
Consequently, because Rose failed to alert the state court that he was asserting a
federal claim, Ground XVI is unexhausted.

C.  Procedural Default:

A petitioner requesting a federal court to issue a writ of habeas corpus must
present his claims to the state courts in the procedurally correct manner. Upshaw v.
Singletary, 70 F.3d 576, 579 (11th Cir. 1995). The procedurally correct way to raise
a claim of trial court error is on direct appeal. Before a claim is procedurally barred
from federal review a state court must reject reviewing the claim that was improperly
presented.

> Thus, the mere fact that a federal claimant failed to abide by a state
> procedural rule does not, in and of itself, prevent this Court from
> reaching the federal claim: "The state court must actually have relied
> on the procedural bar as an independent basis for its disposition of the
> case."

Harris v. Reed, 489 U.S. 255, 262 (1989), quoting Caldwell v. Mississippi, 472 U.S.
320, 327 (1985). Also, the court must state that it is enforcing the procedural rules.
"[I]f 'it fairly appears that the state court rested its decision primarily on federal law,'
this Court may reach the federal question on review unless the state court's opinion

- 6 -

contains a 'plain statement' that its decision rests upon adequate and independent state grounds." <u>Harris v. Reed</u>, 489 U.S. at 261, <u>quoting</u> <u>Michigan v. Long</u>, 463 U.S. 1032, 1042 (1983).  Citing to the state procedural rule and stating that the claim "could have been raised on direct appeal" or in some prior proceeding is insufficient. <u>Harris v. Reed</u>, 489 U.S. at 266.  <u>See</u> <u>also</u> <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir.) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."), <u>cert.</u> <u>denied</u>, 513 U.S. 1061 (1994).  Consequently, the initial question is whether the state court issued a "plain statement" applying the independent and adequate state procedural bar.  The respondent argues that Rose procedurally defaulted three of his grounds of trial court error.

### Ground X

The jury's death recommendation was tainted by consideration of invalid aggravating circumstances, and the vague and overbroad statutory language regarding aggravating factors was not cured, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments.

Issue VII in Rose's direct appeal (Respondent's Exhibit B-1 at 38-40) argued that the state had failed to prove the murder involved a "heightened degree of premeditation, calculation, or planning" to justify charging the jury with the "cold, calculated and premeditated" aggravating circumstance jury instruction.  On direct appeal the Florida supreme court rejected the merits of this "insufficiency" argument.

Appellant also argues that the trial court erred by instructing the jury upon and finding as an aggravating circumstance that the murder was cold, calculated, and premeditated because the evidence was legally insufficient to establish that circumstance.  We find that the trial court

- 7 -

properly found that appellant killed Richardson in a cold, calculated, and premeditated manner.  In support of its finding, the court noted that (1) appellant searched for an object in an accompanying lot before he found the thirty-five-pound concrete block used to kill Richardson; (2) appellant carried the block back over to where Richardson was located; (3) appellant lifted the concrete block over his head, paused, and asked Mr. Richardson to get up before appellant struck him; (4) appellant hurled the thirty-five-pound block six to eight times onto the head of the helpless and defenseless man.

Rose I, 472 So.2d at 1159.  But the issue raised in Ground X is not a challenge to the sufficiency of the proof of "cold, calculated and premeditated."

Rose asserts in Ground X that the "jury received constitutionally inadequate instructions regarding the 'cold, calculated and premeditated' and 'heinous, atrocious or cruel' aggravating factors."  The first time Rose raised this challenge to the adequacy of the jury instructions was when he appealed (Respondent's Exhibit E-1 at 66-68) the denial of his motion for post-conviction relief.[3]  The Florida supreme court rejected reviewing the merits of this claim.

Finally, Rose claims that the jury instructions on the aggravating factors of especially heinous, atrocious, or cruel and cold, calculated, and premeditated failed to properly channel his jury's discretion.  He points out that the United States Supreme Court has recently ruled that the same jury instruction given in Rose's trial with respect to heinous, atrocious, and cruel [FN4] was unconstitutionally vague.  Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992).  It should be noted, however, that while Rose objected to the applicability of these aggravating factors, he made no objection to the wording of the instructions.  Further, Rose made no argument concerning the wording of these instructions on direct appeal.  Thus, his claim is now procedurally barred.  Kennedy v. Singletary, 602 So.2d 1285 (Fla.), cert. denied, 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

FN4. In the sentencing order, the trial judge did not find this aggravating factor to be applicable to Rose's case.

---

[3]  The State of Florida's appellate brief (Respondent's Exhibit E-2 at 39) correctly notes that Rose failed to assert this claim in the Rule 3.850 motion for post-conviction relief.

<u>Rose II</u>, 617 So.2d at 297-98.  The state court's decision rests solely on the

procedural default.[4]

## Ground XV

The erroneous jury instruction that a verdict of life must be made by a <u>majority</u> of the jury materially misled the jury as to its role at sentencing and created the risk that death was imposed despite factors calling for life, and Mr. Rose's death sentence was thus imposed in violation of the Eighth and Fourteenth Amendments.

## Ground XVII

The sentencing court shifted to Mr. Rose the burden of proof on the issue of whether he should live or die, and relieved the state of its burden of proof at sentencing, in violation of the Eighth and Fourteenth Amendments.

Rose first challenged these jury instructions in his motion for post-conviction

relief.  The Florida supreme court rejected reviewing these claims.

The claim that jury instructions improperly shifted the burden of proof to Rose on whether he should live or die and that the instruction that a verdict of life must be made by a majority of the jury misled the jury are procedurally barred.  There was no objection to the jury instructions and the issues were not raised on direct appeal.

<u>Rose II</u>, 617 So.2d at 297.  The state court's decision rests solely on the procedural

default.

Rose procedurally defaulted Grounds X, XV, and XVII.  As a general

proposition, federal courts are precluded from addressing the merits of claims held

procedurally defaulted under state law unless the petitioner can show "cause and

prejudice" or "manifest injustice."  <u>Coleman v. Thompson</u>, 501 U.S. 72, 29-30 (1991);

---

[4]  Even if not procedurally defaulted, review of the merits is precluded by <u>Lambrix v. Singletary</u>, 520, U.S. 518 (1997), holding that <u>Espinosa v. Florida</u>, 505 U.S. 1079 (1992), is not retroactive based on the retroactivity doctrine announced in <u>Teague v. Lane</u>, 489 U.S. 288 (1989).

Murray v. Carrier, 477 U.S. 478, 496 (1986).  "Cause" must ordinarily be something external to the defense.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis original).  Rose fails to show either "cause and prejudice" or "manifest injustice" to overcome the procedural default.  Consequently, Grounds X, XV, and XVII are procedurally barred from review on the merits.

As a result of Rose's procedural defaults, Grounds X and XIV through XVIII are not reviewable on the merits.  The remainder of Rose's grounds are entitled to a review on the merits.

Accordingly, the requests (Doc. 110, 112, 117, and 120) for permission to proceed pro se, for leave to amend the petition (Doc. 115), for the appointment of co-counsel (Doc. 114), and for authorization to retain an investigator (Doc. 118) are **DENIED**.  The motion (Doc. 113) requesting status of the case is **DENIED** as moot. Grounds X and XIV through XVIII are **DISMISSED** for procedural reasons.  The respondent has **FORTY-FIVE (45) DAYS** to supplement the response and counsel for Rose then has **THIRTY (30) DAYS** to supplement his reply.

ORDERED in Tampa, Florida, on February 29, 2008.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**